IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SARAH STEINHAUER,** | : | **Civil No. 1:21-CV-02030** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **EAST PENNSBORO AREA SCHOOL** | : | |
| **DISTRICT, et al.,** | : | |
| | : | |
| **Defendants.** | : | **Judge Sylvia H. Rambo** |

**M E M O R A N D U M**

Before the court is a motion to dismiss the second amended complaint for failure to state a claim filed by Defendants East Pennsboro Township, East Pennsboro Township Police Department, and Detective Adam Shope (collectively, the "Township Defendants"). (Doc. 58.) Plaintiff Sarah Steinhauer ("Plaintiff") alleges that her First, Fourth, and Fourteenth Amendment rights were violated by the Township Defendants' search of her home and failure to investigate an allegedly exculpatory tip. For the reasons set forth below, the motion will be granted.

## I.     BACKGROUND

This action originated as a civil rights and employment discrimination case by Plaintiff against the East Pennsboro Area School District (the "District") and its principal, Richard Tysarczyk (collectively, the "School Defendants.") (*See generally* Doc. 1.) Plaintiff was formerly an art teacher at an elementary school in the District from October 2016 until August 21, 2020, and Principal Tysarczyk was her superior.

(Doc. 57 ¶ 17.) She alleges she was subjected to a hostile work environment, disparate treatment based on her sex, and disability discrimination by the School Defendants. (*Id.* ¶¶ 22-27.)

On July 10, 2020, the District's Superintendent reported to the East Pennsboro Township Police Department that vandalism and theft had occurred at the elementary school. (*Id.* ¶ 29.) Apparently, someone had defaced the school building with spray paint and stolen a ukulele from inside. (*Id.* ¶ 30.) Officer Ryan Leen responded to the scene the same day, reviewed surveillance video of the incident, and drafted the initial incident report. (*Id.* ¶ 31.) This report, which is attached to the second amended complaint, narrates Officer Leen's preliminary investigation. (Doc. 57-1 p. 4.) As relevant here, the report's narrative states that a District employee showed Officer Leen the surveillance video, with Officer Leen writing: "It appeared to be a white male wearing black shorts and a black T-shirt along with a black beanie. The male had gloves and a mask that is required to be worn right now due to COVID-19. The video showed to me at the time only showed the suspect from the side and the back." (*Id.*) The incident report was then forwarded to detectives for review and follow up. (Doc. 57 ¶ 31.)

Detective Adam Shope was assigned to investigate this incident with assistance from nonparty Detective Danielle Owen. (*Id.* ¶ 32.) On July 10, 2020, the detectives published the incident and accompanying video on "CrimeWatch" so that

the public could submit anonymous tips. (*Id.* ¶ 33.)  On July 13, 2020, the District held a private meeting, in which Principal Tysarczyk, Detective Shope, Detective Owen, and several other individuals associated with the School and Township Defendants were present. (*Id.* ¶ 34.) As noted in the police report, Principal Tysarczyk allegedly told Detective Shope that he was "95% sure the suspect was Sarah Steinhauer." (*Id.* ¶ 35; Doc. 57-1 p. 4.) The same day, an anonymous CrimeWatch tip identified a particular high school student, by name, with a history of threatening behavior and who had similar features to the individual in the surveillance video. (Doc. 57 ¶ 41.) The detectives did not investigate this tip, and instead focused their efforts on Plaintiff, which was allegedly in violation of East Pennsboro Township's Code of Ethics and its investigatory policies and practices. (*Id.* ¶ 69; Doc. 57-1 p. 21.)

On July 14, 2020,[1] Plaintiff attended the District's monthly school board meeting, which pertained to COVID-19 working conditions, but remained outside of the school. (Doc. 57 ¶ 37.) According to Plaintiff, Detective Shope and Detective Owen proceeded to carry out a "ruse," approaching her and pretending to be parents inquiring about her thoughts on the District. (*Id.*) The police report notes that the

---

[1] The court notes that there are discrepancies between the dates in the second amended complaint and the attached police report. Whereas the second amended complaint alleges that the private meeting and school board meeting occurred on July 13, 2020, and July 14, 2020, respectively, the police report indicates that the meetings were each held one day later, on July 14, 2020, and July 15, 2020.

3

detectives pretended to be married and spoke with Plaintiff for about ten minutes to see if she matched the description of the individual in the surveillance video. (Doc. 57-1 p. 5.) Detective Shope wrote in the police report: "I was about 95% sure she was the subject." (*Id.*) Then, on July 15, 2020, Detective Shope sought and obtained a search warrant[2] for Plaintiff's residence in Harrisburg, and the next day, searched the home with Detective Owen, another East Pennsboro Township Police officer, and three Susquehanna Township Police officers. (*Id.* ¶¶ 42-43.) No evidence was found in Plaintiff's home or on her cellphone, and despite pressure, she did not confess to the vandalism and theft. (*Id.* ¶ 44.) Plaintiff alleges that the search of her home led to her hospitalization for post-traumatic stress disorder and the exacerbation of preexisting mental and physical disabilities. (*Id.* ¶ 45.)

Plaintiff then initiated this suit by the filing of a complaint, initially only against the School Defendants. (Doc. 1.) Through later amendments, she added the Township Defendants, alleging that her First, Fourth, and Fourteenth Amendment rights were violated by the search of her home and the Township Defendants' failure to investigate the CrimeWatch tip inculpating a different individual. (Doc. 57.) The

---

[2] The application for a search warrant and Detective Shope's supporting affidavit are attached to the second amended complaint. In the supporting affidavit, Detective Shope added that Principal Tysarczyk also informed him that the individuals "gate [*sic*] or walk along with physical descriptions match Steinhauer" and that the detectives obtained a social media profile picture of Plaintiff that they believed matched the individual in the surveillance video. (Doc. 57-1 p. 18.)

Township Defendants have moved to dismiss the second amended complaint. (Doc. 58.) The motion has been fully briefed and is ripe for review.

## I.   <u>STANDARD OF REVIEW</u>

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "When reviewing a 12(b)(6) motion, we 'accept as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them.'" *Estate of Ginzburg by Ermey v. Electrolux Home Prods., Inc.*, 783 F. App'x 159, 162 (3d Cir. 2019) (quoting *Taksir v. Vanguard Grp.*, 903 F.3d 95, 96–97 (3d Cir. 2018)). The facts alleged must be "construed in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010) (internal quotations, brackets, and ellipses omitted). But "[t]he court is not required to draw unreasonable inferences" from the facts. 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004).

The Third Circuit has detailed a three-step process to determine whether a complaint meets the pleading standard. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. *Id.* at 365. Second, the court must "peel away those allegations that are no

more than conclusions and thus not entitled to the assumption of truth." *Id.* Third, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

A defendant may also challenge a plaintiff's complaint for want of standing under Rule 12(b)(1). There are two categories of challenges made under this rule: facial or factual. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d. Cir. 2016). The significance of this distinction centers on how the court is to treat the factual allegations of the nonmoving party. Where, as here, the challenge to subject matter jurisdiction does not dispute the relevant facts alleged in the complaint, the court is required to "consider the allegations of the complaint as true." *Id.* (citing *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d. Cir. 2006)).

## II.    **DISCUSSION**

The Township Defendants move to dismiss the second amended complaint on the grounds that (1) they are entitled to qualified immunity; (2) there are no allegations to support that Plaintiff's alleged constitutional deprivations arose from a municipal custom or policy; and (3) the claims are untimely. (Doc. 59.) The Township Defendants further move to dismiss Plaintiff's claim of punitive damages

based on the existence of the search warrant. (*Id.*) The court will address each in turn.

## A. Qualified Immunity

Qualified immunity protects officials, including police officers, from suits for money damages, when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The first prong of the inquiry requires the court to consider whether the facts alleged show that the officer's conduct violated a constitutional right. *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The second prong requires the court to consider "whether the right was clearly established, such that 'it would [have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Lamont v. New Jersey*, 637 F.3d 177, 182 (3d Cir. 2011) (quoting *Saucier*, 533 U.S. at 202). Satisfying either prong entitles an officer to qualified immunity. *Davenport v. Borough of Homestead*, 870 F.3d 273, 280 (3d Cir. 2017).

In a case involving a challenge to a search warrant, such as here, the court asks whether it was "clearly established that the circumstances with which [the officer] was confronted did not constitute probable cause." *Olson v. Ako*, 724 F. App'x 160, 166 (3d Cir. 2018) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640-41 (1987). Where probable cause is based on witness identification, probable cause

is satisfied unless it is unreliable or undermined by exculpatory evidence. *Pinkney v. Meadville*, 95 F.4th 743, 749 (3d Cir. 2024). There can be probable cause "even if there is 'some unreliability or exculpatory evidence.'" *Id.* (quoting *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 478 (3d Cir. 2016).

Upon consideration of the first prong of the qualified immunity analysis, the court finds that Detective Shope is immune from suit for the July 16, 2020, search of Plaintiff's home because there was probable cause to obtain the warrant. Detective Shope received information from a source, Principal Tysarczyk, identifying Plaintiff as the individual in the surveillance video. While Plaintiff alleges that Detective Shope "relied solely on Defendant Tysarczyk's baseless statement [that it was Plaintiff]," this allegation is belied by both the attached police report and the attached supporting affidavit of probable cause. After Principal Tysarczyk informed Detective Shope that the individual in the surveillance video appeared to match the apparently distinctive gait of Plaintiff, Detective Shope and Detective Owen obtained social media pictures of Plaintiff, including a side profile of her head, to compare to the surveillance video, and both were satisfied that it appeared to match Plaintiff. The detectives, however, did not stop there. They then talked to Plaintiff in person at a school board meeting to verify their suspicion that she was the individual. Again, satisfied that Plaintiff matched the individual, Detective Shope then applied for a search warrant.

The analysis does not end here, however, where Plaintiff additionally alleges that the detectives failed to investigate the CrimeWatch tip implicating another individual as the suspect and Detective Shope failed to include this in the affidavit of probable cause. Ordinarily, an allegation that police failed to investigate, without another recognized constitutional right, is not sufficient to proceed with a Section 1983 claim. *Riecov. Moran*, 633 F. App'x 76, 80 (3d Cir. 2015) (citing *Graw v. Fatnasky*, 68 F. App'x 378, 383 (3d Cir. 2003). Plaintiff has appropriately connected this failure to investigate with the right to be free from unreasonable searches and seizures where the police are alleged not only to fail to investigate the tip, but not to mention it as potentially exculpatory in the affidavit of probable cause.

For a warrant to be constitutionally suspect, "misstatements and omissions must have been 'material, or necessary, to the finding of probable cause." *Pinkney*, 95 F.4th at 748-49 (citing *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)). Here, the anonymous CrimeWatch Tip implicating another person does not vitiate probable cause and was not a material omission. The detectives reasonably believed, after an identification of Plaintiff by her boss and an independent investigation, that Plaintiff matched the individual in the surveillance video. It could be true that the anonymous CrimeWatch tip identified someone who also resembled the individual, but the existence of another person matching the description does not rise to the level of a material omission and would not vitiate probable cause to obtain the search

warrant. Thus, Detective Shope is entitled to qualified immunity and will be dismissed.[3]

While Detective Shope enjoys qualified immunity from suit, East Pennsboro Township and the East Pennsboro Township Police Department do not. The Supreme Court has long held that qualified immunity does not apply to municipalities. *Barna v. Bd. of Sch. Dirs. Of the Panther Valley Sch. Dist.*, 877 F.3d 136, 145 (3d Cir. 2017) (citing *Owen v. City of Independence*, 445 U.S. 622, 657 (1980) ("[M]unicipalities have no immunity from damages liability flowing from their constitutional violations.")). Thus, the court will deny qualified immunity to those defendants.

## B. Municipal Liability

Municipalities cannot be held liable for the unconstitutional acts of their employees under Section 1983. *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 174 (3d Cir. 2017). Instead, local governments may be found liable for civil rights violations for "their own illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). To establish liability against a municipality, a plaintiff must allege that the constitutional violation was caused by the implementation or execution of a formally

---

[3] The second amended complaint further alleges that Plaintiff's First and Fourteenth Amendment rights were violated. However, there are no discernable allegations supporting violations of these amendments, and Plaintiff only mentions the amendments in passing in her brief in opposition to the motion to dismiss. (Doc. 61 p. 10.) Accordingly, the court will grant the motion to dismiss with respect to these claims.

adopted policy, regulation, or decision or an informally adopted custom. *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978). A plaintiff must "identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009).

The Third Circuit explained the distinction between policy and custom, and how to establish each:

> A government policy or custom can be established in two ways. Policy is made when a 'decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action' issues an official proclamation, policy, or edict. A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanently and well-settled' as to virtually constitute law.

*Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted). In addition to these requirements, there must be an underlying constitutional violation caused by the unconstitutional policy. *Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 482 (3d Cir. 2003) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992).

Here, Plaintiff's municipal liability claim must be dismissed on multiple fronts. First and foremost, as the court noted in granting qualified immunity to Detective Shope, there was probable cause to obtain the search warrant, and thus no constitutional violation. This alone defeats Plaintiff's claim of municipal liability. Beyond this, however, is the lack of allegations regarding a custom or policy on

11

behalf of East Pennsboro Township and the East Pennsboro Township Police Department. As averred in the second amended complaint, "[t]he Police Defendants failed to comply and failed to uphold the East Pennsboro Township Police Department's Code of Ethics and expected investigation policies and practices." (Doc. 57 ¶ 119.) The Code of Ethics is attached to the second amended complaint. (Doc. 57-1 p. 21.) Plaintiff does not elaborate as to the "expected investigation policies and practices" or what they require.

Regarding the Code of Ethics, even if this single page document were to establish a policy, it is not clear whether Detective Shope violated it, and even if he did, the Code of Ethics does not establish the floor for constitutional rights. That is, an East Pennsboro Township Police Officer could violate the Code of Ethics but not violate the Constitution. Regarding the "expected investigation policies and practices," the court is left to wonder what these expected policies are and how they caused a violation of Plaintiff's constitutional rights. Accordingly, East Pennsboro Township and the East Pennsboro Township Police Department must be dismissed.[4]

---

[4] The Township Defendants additionally move to dismiss on the ground that the claims against them are untimely. Because the court has already determined that the claims are not viable on other, independent and dispositive grounds, the court does not address this argument.

III.   <u>**CONCLUSION**</u>

For the reasons set forth above, the motion to dismiss will be granted. An appropriate order shall follow.

<u>/s/ Sylvia H. Rambo</u>
SYLVIA H. RAMBO
United States District Judge

Dated: August 22, 2024